12 CV 6857

UNITED STATES DISTRICT COURT FOR THE
SOUTHEASTERN DISTRICT OF NEW YORK
= = = = = = = = = = = = = = = = = = = = = = = = = = = = =X

FRANCIA VARGAS,

PLAINTIFF,

-AGAINST-                          FEDERAL COMPLAINT

CIVIL DKT#_____

COUNTRYWIDE HOME LOANS, INC
THE BANK OF NEW YORK MELLON
JOHN DOE # 1-4



DEFENDANTS.

= = = = = = = = = = = = = = = = = = = = = = = = = = =X

     Plaintiff, Francia Vargas being duly sworn, depose and state
under the penalties of perjury and upon information and belief state
the following:


I.    **Statement of Jurisdiction:**


    This is a Civil Action seeking both declaratory and injunctive relief

and or damages to defendant and protect the rights guaranteed by

the United States Constitution. This action is brought pursuant to

title 28 U.S.C. Section 1331 AND 1392 DIVERSITY as well as

Section 2201 and 2202 of Chapter 151, 155 and 159 an that this Court has

jurisdiction over this action pursuant to title 28 U.S.C. Section 1983 and 1985 of

the federal code.

## PARTIES INVOLVED

PLAINTIFF:    FRANCIA VARGAS
ADDRESS:    45 FAIRVIEW AVENUE, APT. 10G
          NEW YORK, NY 10040

DEFENDANT:    COUNTRYWIDE HOME LOANS, INC.
ADDRESS:    2595 W. CHANDLER BLVD
          CHANDLER, AZ 85224

DEFENDANT:    THE BANK OF NEW YORK MELLON
ADDRESS:    C/O PHELAN HALLINAN & SCHMIEG, LLP
          1617 JFK BLVD., SUITE 1400
          ONE PEN CENTER PLAZA
          PHILADELPHIA, PA 19103

**Note:    Address is subject to change and notice will be issued at that point .**

**NOTE     STATEMENT OF EXHAUSTION:** Plaintiff herein states that during the course of her continuing to make timely and monthly mortgage payments to the defendants, she has experienced an increase in each month's payments and that his discovery of an increase in the monthly mortgage payments and that these increases were challenged by the plaintiff in written communications, negotiations for loan modifications and other means of communications with both defendants. At some point after the assignment of mortgage, the payments were so high that the plaintiff feared foreclosure and that the current status of the mortgage is in foreclosure and that the defendants had assigned the mortgage to and that the assignment of mortgage was illegal, defective and did not have the necessary proofs and evidence of a sound and legitimate transfer of real property and ownership. Secondly, the plaintiff further believes that he has exhausted all of his remedies in order to cure the matter before filing a federal complaint before this court herein.

## II.                          STATEMENT OF FACTS

1.       The plaintiff claims alleges that she is a victim of predatory lending, fraud and deception by the defendant in which now these defendants has commenced an action to foreclosure on her mortgage.

2.       The fact that both Countrywide Home Loans, Inc the assignee and original lender participated and engaged in highsight fraud warrant that this court examine the entire mortgage documents and other related materials for the purpose of discharging the mortgage.

3.       Then there comes the issue as it relates to predatory lending in which the defendant argues that there are numerous concerns that plaintiff along with known and unknown assigns and its trustee participated in such illegal and unconstitutional practice.

4.       Predatory lending has become one of the most critical policy issues facing the financial services industry, particularly mortgage lending.

5.       Nearly every federal financial services regulatory agency has publicly denounced predatory lending and called for more effective regulation to address it.

6.      Legislation has been proposed in Congress and several states to combat predatory lending, and trade associations and individual financial institutions have declared their concerns.

7.      Also, the Federal Reserve Board has proposed a rule to require lenders to report annual percentage rates for all loans, a measure that could help identify predatory lenders.

8.      Predatory loans are characterized by excessively high interest rates or fees, and abusive or unnecessary provisions that do no benefit the borrower, including balloon payments or single-premium credit life insurance, large prepayment penalties, and underwriting that ignores a borrower's repayment ability.

9.      Yet, although high interest rates or fees are common characteristics of predatory loans, high-cost loans are not necessarily predatory.

10.     Today, predatory lenders use sophisticated technology and numerous sources of publicly available data to identify potential customers.

11.     They market their products to customers they identify as financially unsophisticated or vulnerable, and therefore most likely to accept

highly unfavorable loan terms. In particular, as in the matter before this court, predatory lenders look for people with limited education who are not adept in financial matters and lack financial sophistication to scrutinize loans.

12.     Such lenders often prey on household that have limited incomes but significant equity in their homes.

13.     The second characteristic of a predatory loan is the set of abusive terms it contains.

14.     Predatory loan terms are structured to extract the greatest possible return to the lender. For equity stripping purposes, they are also routinely designed to preclude a borrower's ability to repay the loan, just as this case demonstrates.

15.     The loan itself may be unnecessarily large, even in excess of 100 percent loan to value ration.

16.     As long as the amount of the loan exceed the fair market value of the home it is difficult for the owner to refinance the mortgage or to sell the house to pay off the loan.

17.     Negative amortization loans are structured so that interest is not

amortized over the life of the loan and the monthly payment is insufficient to pay off the accrued interest.

18.     The principal balance therefore increases each month and at the end of the loan term, the borrower may owe more than he or she originally borrowed in stated amount.

19.     Aside from the loan itself, typically offered at very high interest rates, the loan terms often include inflated and padded cost, such as excessive closing or appraisal charges or fictitious appraisal reports, just as in this case, high origination and other administrative fees and exorbitant prepayment penalties that trap lower income borrowers into the sub-prime market.

20.     While prepayment fees are rarely charged in the prime market-some 2 or 3% of the mortgage carry them and they are included in 80% of subprime mortgage within the local areas of urban neighborhood. Fraudulent behavior is the third identifying characteristic of a predatory loan.

21.     It refers to illegal management by the lender of the loan transaction to extract the maximum value for the lender. Fraudulent behavior

might include: 1) failure to explain the terms of the loan or providing obscure information, and 2) using high-pressure tactics to force a prospective borrower to continue through the loan application process in cases in which the customer would prefer to discontinue the process, and 3) omitting explanations of credit life insurance or balloon payments, and 4) discouraging borrowers from exploring lower-cost option.

22.     The parties involved herein is the defendants, its assignors and other known and unknown participant during those closing proceedings that lead to the predatory lending scheme, along with others unknown to the others, which also include the appraiser and documents relating to the value of the appraisal report, pictures and other data that was used, faxed or emailed or sent to the plaintiff. The defendant, did not have the liberty to obtain the entire closing documents or the HUD-1 statements; however, upon information and belief, there was an issue of predatory lending as it relates to the defendant.

23.     Nevertheless, plaintff is requesting that this court issue a declaratory judgment with a stay of the foreclosure sale in order to

allow for the undersigned to raise these significant issues and to conduct a preliminary conference for the purpose of obtaining back their home.

24.   That the defendant Countrywide along with others known and unknown to these proceedings are the sole entity responsible for the increase of those high cost loans while knowing that the defendant was not qualified to purchase a mortgage at the income rate.

25.   That defendant and others had participated in  a scheme and was forced and compelled to borrow consecutive loans as a **result** of the high-pressure abusive fraudulent behavior that is characterized by the predatory lenders and despite the fact that she was not making the income in order meet the debt that these mortgage loans incurred.

26.   The plaintiff Francia Vargas was not made aware of any such increase in fees, cost and expenses in connection with the mortgage or the assignment of mortgage itself in connection with the proper because they were not the purchasers of the sub-prime mortgage nor were they prived to the information at that time. Upon information and belief, the plaintiff had abused its position in order to inflate the true value of the property in over 200% in that doing so, former purchaser

was unable to make the mortgage payments and that the following foreclosure action that was commenced against the property was commenced in foreclosure.

27.     Furthermore, the mortgage is being foreclosed by defendant under false pretends because the moving party in the foreclosure action does not legally own the property nor do plaintiff have legal standing to commence such an action, **Kluge v. Fugazy**, 145 A.D. 537, 536 N.Y.S. 2d 92, also see **Merritt v. Bartholick**, 36 N.Y. 44, 45, **Flyer v. Sullivan**, 284 App Div 697, **Manne v.Carlson**, 49 App. Div. 276 where the court held that '....we find that the written agreement and assignment between the parties were clear and unambiguous...'[].

28.     The plaintff Francia Vargas herein demands for a declaratory judgment pursuant to 1921 RPAPL (2) in order to be granted the relief of an order that declare the mortgage issued by those named herein defendant or its trustee be deemed to be predatory lending and to discharge the loans in its totality and to include any and all foreclosure proceedings orders and judgments made in connection with both the foreclosure action.

29.     In the alternative, plaintiff demands that the defendants be directed

to pay for the entire balance of plaintiff's interest in the property including maintenance and restoration and repairs in the sum of $390,000.00   dollars would suffice for the damages caused by the frivolous actions filed by defendants herein.

30.    That the defendants, collectively as well as in their individual capacities are liable for the damages to the plaintiff's financial problems and the fact that the defendant put an extensive amount of equity into the property since the judgment of foreclosure and sale.

31.    The issue before this court is predatory lending and illegal bank fraud and or misrepresentation by the appraisal in which the defendants, along with others unknown only by the HUD-1 statements, and post closing in which plaintiff was not made aware of until the pendency of the foreclosure action commenced by the defendants and or others known or unknown to these proceedings.

32.    That an extensive discovery of the facts, including [1] a copy of the note, and [2] a certificate of conformity, [3] a trust and power of attorney,[4] the cancellation of the lis pendens for lack of the attorney's certificate pursuant to 22 NYCRR 130.1-1 [c].

33.   The defendants, along with others, by way of the assignment of mortgage, must be compelled to answer as well whether other sources of ***income verification*** was made and to show and product the documents relating to the supporting facts for the increase in the mortgage payments. In that the assignment of mortgage is defective and lacks the proper evidence of (1) the power of attorney from the lending bank to the agent commencing the action in foreclosure, and (2) a corporate resolution or agreement, and (3) a certificate of merit among other things.

34.   That the plaintiff's actions did not contribute to the injuries caused by those named herein and because these proceedings were conducted in hindsight and personal delivery of the process was not met, this court must dismiss the entire matter with prejudice coupled with the dismissal of the complaint and cancellation of the lis pendens herein.

35.   In the matter of **Citi Mortgage, Inc., v. Gretchen Brown, et, al**., of the Supreme Court ,I.A.S Term, Part 37, Suffolk County, ***Hon. Joseph Farneti, J***., [Index No. 30755/2007], the court held the following, ["....in order to prove standing, plaintiff must demonstrate that it was the owner of the note and mortgage at the time it commenced this

foreclosure action, quoting, **Fannie Mae v. Youkelsone**, 303 A.D. 2d 546 [2003].."].

36.    Foreclosure of a mortgage may not be brought by one who has no title to it, and absent transfer of the debt, the assignment of the mortgage is a nullity, **Kluge v. Fugazy**, 145 A.D. 2d 537 [1988]. The note secured by the mortgage is a negotiable instrument; see UCC 3-104, which requires indorsement on the instrument itself, or on a paper so firmly affixed thereto as to become part thereof, UCC 3-202[2] in order to effectuate a valid assignment of the entire instrument. As such the indorsement in the matter before this court has failed to conform with UCC 3-202[2], see **Slutsky v. Blooming Grove Inn, Inc**., 147 A.D. 2d 208 [1989].

37.    The most important issue herein raised is that the defendants named herein this federal complaint are not the proper and legal owner of both the note and the mortgage herein in that defendants' actions violated state laws in the clear prohibition against separating a lien from its debt and that defendants does not have standing to bring foreclosure actions, **Merrit v. Bartholick**, 36 N.Y. 44, **45 { '..., a transfer of the mortgage without the debt is a nullity, and no**

**interest is acquired by it..'},** also quoting the matter of **Harry Katz v. East-Village Realty Co**., 249 A.D. 2d 243, 672 N.Y.S. 2d 308 in which the court held that **"....plaintiff's attempt to foreclose upon a mortgage in which he had no legal or equitable interest was without foundation in law or fact..",** and the IAS court's dismissal of the foreclosure action pursuant to CPLR 3211 (a) [1] was, accordingly appropriate, **Kluge v. Fugazy**, 145 A.D. 2d 537, and "..dismissal was also warranted by reason of defendants failure to join the party to whom he assigned the mortgage and who, he concedes, possesses a security interest in the property....", CPLR 3211 (a) [10]. **(See original text).**

38.      The defendants cannot argues that in reading the assignment of mortgage which **"....HAS NO RETROACTIVE  EFFECTIVE DATE..."** for which to ascertain as to whether plaintiffs' commencement of action was prior to or after the purpose and force of the assignment and therefore must be considered annulled by this court.

39.      That the next important concern is that defendants' is not the proper and legal owner of the premises at issue and that the note was separated from its debt which violates state laws, see **Griffey v. New**

**York Cent. Ins. Co.**, 100 N.Y. 417, and because of the assignment of mortgage plaintiff has no legal right to ownership thereof, **Leon v. Martinez**, 84 N.Y. 2d 83, **Costal Commercial Corp. v. Kosoff & Sons**, 199 N.Y.S. 2d 852.

40.    The note secured by the mortgage is a negotiable instrument which requires ***indorsement*** on the instrument itself *'...or on a paper thereof in order to effectuate a valid* '...assignment of the entire instrument...' UCC 3-104, UCC 3-202 [2] , UCC 3-202[3], [4], also see the matter of **Flyer v. Sullivan**, 284 App. Div. 697 and **Manne v. Carlson**, 63 N.Y.S. 162.

41.    That the assignment of mortgage within the secondary mortgage market pursuant to Real Property Law Section 275 (a) support the fact that a third party is the current and legal owner of said note and that the mortgage was assigned, ***absent no effective date***,  to a third party as well. More importantly, the court further stated that "...a foreclosure action may not be brought * * * by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity, see **Flyer v. Sullivan**, 284 App. Div. 697, 698 and **Beak v. Walts**, 266 App. Div. 900, **Manne v. Carlson**, 49 App. Div. 276, 278

**WHEREFOR**, your deponent **Francia Vargas** the plaintiff prays that the Court award the following relief:

(a) Injunctive relief preventing the defendants from engaging in any future demands for mortgage payments pending the outcome and determination of these proceedings;

(b) Injunctive relief preventing defendants and unknown others from increasing the mortgage payments and to cause for a discharge of mortgage herein;

(c) Directing the defendants and others in connection with the mortgage to discharge both mortgages and to immediately create and establish a new reconstruction mortgage at current market value of said property at issue;

(d) Directing award for punitive damages in the amount of $ 925,000.00 dollars against all defendants;

(e) Damages to be determined for the federal violations and interstate threats over the phone;

(f) Attorney's fees and cost pursuant to 42 U.S.C 1988

## DEMAND FOR A JURY TRIAL

As to those issues triable by jury, plaintiff demands a jury trial.

## FIRST CAUSE OF ACTION

DEFENDANTS COLLECTIVELY AND INDIVIDUALLY  PARTICIPATED IN
FRAUD AND PREDATORY LENDING WHICH WARRANT BOTH A
DISCHARGE OF MORTGAGE AND DAMAGES AS DEMANDED IN THE
COMPLAINT HEREIN.

## SECOND CAUSE OF ACTION

DEFENDANTS AS INDIVIDUALS VIOLATED THE DUE PROCESS RIGHTS
OF THE PLAINTIFF WHEN IT PARTICIPATED IN HINDSIGHT DECEPTION
AND PRACTICES THAT VIOLATE THE LAW ALONG WITH A CONSPIRACY
TO ENGAGE IN UNJUST ENRICHMENT, FRAUD AND THEFT OF EQUITY.

## THIRD CAUSE OF ACTION

THE DEFENDANTS PARTICIPATED IN PREDATORY LENDING AND FRAUD
SINCE THE JUDGMENT OF FORECLOSURE AND SALE WAS BASIS
SOLELY UPON THE DEFAULTING ON A MORTGAGE PAYMENT INITIALLY
ISSUED BY THE DEFENDANTS WARRANT THAT THE MORTGAGE BE
DISCHARGE AND OR A DECLARATORY JUDGMENT MADE VOIDING THE
MORTGAGE

**WHEREFORE**, your deponent respectfully prays for a judgment
against the defendants for damages in the sum of $ 350,000.00 Dollars for
compensatory and a jury trial for punitive damages. That any future
retaliation against plaintiff for his protected activities in connection with this
litigation will be made part of the jury decision to award punitive damages.

**I STATE UNDER THE PENALTIES OF PERJURY THAT THE FOREGOING
IS TRUE AND CORRECT PURSUANT TO 28 USC 1746.**

**DATE: September 10, 2012**

By /s/ _Francia Vargas (M.)_.

**Francia Vargas, Pro-Se**
45 Fairview ave #10G
New York n.y-10040

**CC: All Proofs of Service will be Submitted upon Service of Thereafter.**

# Exhibit A

Prepared By:   Phelan Hallinan & Schmieg, LLP
               1617 JFK Boulevard, Suite 1400, One Penn Center Plaza
               Philadelphia, PA 19103

Return To:     Phelan Hallinan & Schmieg, LLP
               1617 JFK Boulevard, Suite 1400, One Penn Center Plaza
               Philadelphia, PA 19103
               ryan.galvin@fedphe.com

CPN:           549750128268 1

LCGIS
Registry   KSM   5/2/10

RECORDED
03/02/2010 2:18:23 PM
RECORDER OF DEEDS
LEHIGH COUNTY
PENNSYLVANIA
Inst Num:      2010005865

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that **"Mortgage Electronic Registration Systems, Inc."** hereinafter "Assignor" the holder of the Mortgage hereinafter mentioned, for and in consideration of the sum of ONE DOLLAR ($1.00) lawful money unto it in hand paid by **THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-23,** "Assignee," the receipt whereof is acknowledged, has granted, bargained, sold, assigned, transferred and set over unto the said Assignee, its successors and assigns, ALL THAT CERTAIN Indenture of Mortgage given and executed by **FRANCIA VARGAS and HECTOR B. VARGA** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS A NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.,** bearing the date 10/23/2006, in the amount of $141,600.00, together with the Note and indebtedness therein mentioned, said Mortgage being recorded on 11/03/2006 in the County of LEHIGH, Commonwealth of Pennsylvania, in **Mortgage Instrument No. 7377743, MIN: 10001570007342 9231.**

Being Known as Premises: **332 NORTH 16TH STREET, ALLENTOWN, PA 18102-5615**
Parcel No: 549750128268 1

The transfer of the mortgage and accompanying rights was effective at the time the loan was sold and consideration passed to the Assignor. This assignment is solely intended to describe the instrument sold in a manner sufficient to put third parties on public notice of what has been sold.

Also the Bond or Obligation in the said Indenture of Mortgage recited, and all Moneys, Principal and Interest, due and to grow due thereon, with the Warrant of Attorney to the said Obligation annexed. Together with all Rights, Remedies and incidents thereunto belonging. And all its Right, Title, Interest, Property, Claim and Demand, in and to the same:

TO HAVE, HOLD, RECEIVE AND TAKE, all and singular the hereditaments and premises granted and assigned, or mentioned and intended so to be, with the appurtenances unto Assignee, its successors and assigns, to and for its only proper use, benefit and behoof forever; subject, nevertheless, to the equity of redemption of said Mortgagor in the said Indenture of Mortgage named, and his/her/their heirs and assigns therein.

IN WITNESS WHEREOF, the said "Assignor" has caused its Corporate Seal to be herein affixed and these presents to be duly executed by its proper officers this 3rd day of February, 2010.

Mortgage Electronic Registration Systems, Inc.

By: Judith T. Romano

Judith T. Romano, Assistant Secretary and Vice President

Sealed and Delivered
in the presence of us:

State of Pennsylvania        :
                             : ss.
County of Philadelphia       :

On this 3rd day of February, 2010, before me, the subscriber, personally appeared Judith T. Romano, who acknowledged herself to be the Assistant Secretary and Vice President of **Mortgage Electronic Registration Systems, Inc.,** and that she, as such Assistant Secretary and Vice President, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Stamp/Seal:

Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
EUGENE JASKIEWICZ, Notary Public
City of Philadelphia, Phila. County
My Commission Expires August 13, 2012

ALL THAT CERTAIN two and one-half story brick mansard roof messuage, tenement and lot or piece of ground thereto belonging, situate on the West side of Sixteenth Street, between Monroe and Wayne Streets, in the Eleventh Ward of the City of Allentown, Commonwealth of Pennsylvania, and known as #332 North Sixteenth Street, Allentown, Pennsylvania, bounded and described as follows, to wit:

BEGINNING at a point on the West side of Sixteenth Street, between Monroe and Wayne Streets, nineteen (19) feet more or less South of the southwest corner of Sixteenth and Wayne Streets in the middle of a party wall of property hereby conveyed and property #334 North Sixteenth Street on the North hereof, being property now or late of Eugene M. Kistler; thence West through the middle of a party wall and along said property, one hundred and twenty (120) feet to the Eastern side of a twenty (20) feet wide alley; thence South along the Eastern side of said twenty (20) feet wide alley, eighteen (18) feet to a point in line of property #330 North Sixteenth Street, property now or late of Eugene M. Kistler; thence East and along same passing through the middle of a party wall, one hundred and twenty (120) feet to Sixteenth Street; thence North along the West side of Sixteenth Street, eighteen (18) feet to the place of beginning.

Containing in front on Sixteenth Street eighteen (18) feet and extending in depth of equal width one hundred and twenty (120) feet to said alley.

Known as 332 N. 16th Street, Allentown
Also known as Pin #549750128268 1 Tile #475915C

BEING THE SAME PREMISES which Franklyn R. Gergits, Sr. and Rose A. Gergits, husband and wife, by their Deed dated March 16, 1970 and recorded March 23, 1970 in the Office of the Recorder of Deeds of Lehigh County, PA. in Vol. Book 1133, Page 809, granted and conveyed to Charles J. Gergits and Elizabeth I. Gergits, husband and wife, Grantors herein.

### *ANDREA E. NAUGLE*
### *LEHIGH COUNTY CLERK OF JUDICIAL RECORDS*



Recorder of Deeds Division
Deborah A. Casciotti, Chief Deputy
Lehigh County Government Center
17 S. Seventh Street - Room 350
Allentown, PA 18101-2400
610-782-3162

<u>*RETURN DOCUMENT TO:</u>
PHELAN HALLINAN & SCHMIEG LLP
ONE PENN CENTER AT SUBURBAN STATION
1617 JFK BLVD STE 1400
PHILADELPHIA, PA 19103

Instrument Number - 2010005865
Recorded On 3/2/2010 At 2:18:23 PM
* Instrument Type - ASSIGNMENT OF MORTGAGE
Invoice Number - 45107       User ID: BAD       *Total Pages - 4
* Grantor - MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC
* Grantee - BANK OF NEW YORK MELLON
* Customer - PHELAN HALLINAN & SCHMIEG LLP

* FEES
```
STATE WRIT TAX          $0.50
STATE JCS              $23.50
RECORDING FEES         $15.00
COUNTY ARCHIVES FEE     $2.00
ROD ARCHIVES FEE        $3.00
UPI CERTIFICATION FEES $10.00
TOTAL PAID             $54.00
```

I hereby CERTIFY that this document is
Recorded in the Recorder of Deeds Office
of Lehigh County, Pennsylvania



*Andrea E. Naugle*
Clerk of Judicial Records
Recorder of Deeds Division

## THIS IS A CERTIFICATION PAGE

# **<u>Do Not Detach</u>**

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

0018A6

INSTRUMENT NUMBER - **2010005865**

US

Prepared By:
MELANIE POWERS
COUNTRYWIDE HOME LOANS, INC.


2595 W CHANDLER BLVD
CHANDLER
AZ 85224

Phone: (866)628-4995

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Parcel Number:
5497501282681

Premises:
332 N 16TH ST
ALLENTOWN
PA 18102-5615

**MAIL**

PRIDE ABSTRACT & SETTLEMENT
1803 W. BROAD ST.
QUAKERTOWN, PA
18951

――――――――― [Space Above This Line For Recording Data] ―――――――――

00015026215410006
[Doc ID #]

# MORTGAGE

**PENNSYLVANIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 17

VMP -6A(PA) (0506)    CHL (10/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291

Form 3039 1/01

```
*  2 3 8 9 1 *
```

```
*  1 5 0 2 6 2 1 5 4 0 0 0 0 0 1 0 0 6 A *
```

This Document Recorded
11/03/2006
09:18AM
Doc Code: MTG        Lehigh County, PA Recorder of Deeds Office

Doc Id: 7377742
Receipt #: 271088
Rec Fee: 85.00



7377742
Page: 1 of 27
11/03/2006 09:18AM

LEHIGH COUNTY

Inst # 7377742 - Page 1 of 27

DOC ID #: 00015026215410006
MIN 1000157-0007342923-1

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated OCTOBER 23, 2006
together with all Riders to this document.

(B) "Borrower" is
FRANCIA VARGAS   AND  HECTOR B. VARGAS
                                    HV

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is
COUNTRYWIDE HOME LOANS, INC.

Lender is a
CORPORATION

organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314
Calabasas, CA 91302-1613

(E) "Note" means the promissory note signed by Borrower and dated OCTOBER 23, 2006
The Note states that Borrower owes Lender
ONE HUNDRED FORTY ONE THOUSAND SIX HUNDRED and 00/100

Dollars (U.S. $ 141,600.00          ) plus interest. Borrower has promised to pay this debt in regular



7377742
**Page: 2 of 27**
11/03/2006 09:10AM

DOC ID #: 00015026215410006

Periodic Payments and to pay the debt in full not later than   NOVEMBER 01, 2036

(F) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "**Escrow Items**" means those items that are described in Section 3.

(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.



7377742
Page: 3 of 27
11/03/2006 09:18AM

TRANSFER OF RIGHTS IN THE PROPERTY      DOC ID #: 00015026215410006

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

            COUNTY            of               LEHIGH

        [Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of

            332 N 16TH ST, ALLENTOWN

                            [Street/City]

Pennsylvania 18102-5615 ("Property Address"):

     [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6A(PA) (0508)     CHL (10/05)            Page 4 of 17                          Form 3039 1/01



7377742
Page: 4 of 27
11/03/2005 09:13am

# EXHIBIT 'A'

ALL THAT CERTAIN two story brick mansard roof messuage, tenement and lot or piece of ground thereto belonging, situate on the West side of Sixteenth Street, between Monroe and Wayne Streets, in the Eleventh Ward of the City of Allentown, Pennsylvania, and known as #332 North Sixteenth Street, Allentown, Pennsylvania, bounded and described as follows, to wit:

BEGINNING at a point on the West side of Sixteenth Street, between Monroe and Wayne Streets, nineteen (29) feet more or less South of the southwest corner of Sixteenth and Wayne Streets in the middle of a party wall of property hereby conveyed and property #3334 North Sixteenth Street on the North hereof, being property now or late of Eugene M. Kistler; thence West through the middle of a party wall and along said property, one hundred and twenty (120) feet to the Eastern side of a twenty (20) feet wide alley; thence South along the Eastern side of said twenty (20) feet wide alley, eighteen (18) feet to a point in line of property #330 North Sixteenth Street, property now or late of Eugene M. Kistler; thence East and along same passing through the middle of a party wall, one hundred and twenty (120) feet to Sixteenth Street; thence North along the West side of Sixteenth Street eighteen (28) feet to the place of beginning.

CONTAINING in front on Sixteenth Street eighteen (18) feet and extending in depth of equal width one hundred and twenty (120) feet to said alley.

BEING THE SAME PREMISES which Franklyn R. Gergits, Sr. and Rose A. Gergits, husband and wife, of the City of Allentown, County of Lehigh, and Commonwealth of Pennsylvania, by their Indenture dated March 16, 1970, and recorded in the Office of the Recorder of Deeds in and for the County of Lehigh, in the Commonwealth of Pennsylvania, in Deed Book Volume 1133 Page 809, granted and conveyed unto Charles J. Gergits and Elizabeth Gergits, husband and wife, the grantors herein.

PARCEL ID #: 549750128268 1

DOC ID #: 0001502621541006

# ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this TWENTY-THIRD    day of
OCTOBER, 2006    , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the
same date given by the undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the property described in the Security Instrument and
located at:

332 N 16TH ST, ALLENTOWN, PA 18102-5615

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX - Single Family
CONV
• BC - ARM Rider
1U193-US (12/05)(d)                    Page 1 of 4





7377742
Page: 5 of 27
11/03/2006 09:18AM

DOC ID #: 0001502621541006

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of    8.750 %.   The  Note  provides  for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the  first           day of NOVEMBER, 2008      , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX & SEVEN-EIGHTHS          percentage point(s) (    6.875 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than    10.250 % or less than     8.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF percentage point(s) (    1.500 %) from the rate of interest I have been paying for the preceding six  months.  My  interest  rate  will  never  be  greater  than    15.750   % or less than    8.750 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

CONV
• BC - ARM Rider
1U193-US (12/05)                    Page 2 of 4



7377742
Page: 7 of 27
11/03/2006 09:18AM

DOC ID #: 0001502621541006

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:
**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
● BC - ARM Rider
1U193-US (12/05)                      Page 3 of 4



7377742
**Page: 8 of 27**
11/03/2006 09:10AM

DOC ID #: 00015026215410006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
FRANCIA VARGAS                                  - Borrower

_____ (Seal)
HECTOR B. VARGAS                                - Borrower

_____ (Seal)
                                                - Borrower

_____ (Seal)
                                                - Borrower

CONV
• BC - ARM Rider
1U193-US (12/05)                     Page 4 of 4

7377742
Page: 9 of 27
11/03/2006 09:10AM

# 1-4 FAMILY RIDER
### (Assignment of Rents)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
PARCEL ID #:
5497501282681

Prepared By:
MELANIE POWERS

00015026215410006
[Doc ID #]

**MULTISTATE 1 - 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Page 1 of 5

-57R (0411)        CHL (11/04)(d)                                    Initials: FV  HV
                   VMP Mortgage Solutions, Inc. (800)521-7291        **Form 3170 1/01**

* 2 3 9 9 1 *

* 1 5 0 2 8 2 1 5 4 0 0 0 0 0 1 0 5 7 R *

7377742
Page: 10 of 27
11/03/2006 08:10AM

DOC ID #: 00015026215410006

THIS 1-4 FAMILY RIDER is made this TWENTY-THIRD day of OCTOBER, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

332 N 16TH ST, ALLENTOWN, PA 18102-5615

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

-57R (0411)        CHL (11/04)        Page 2 of 5        Initials: F V H V

Form 3170 1/01

7377742
Page: 11 of 27
11/03/2006 09:10AM

DOC ID #: 0001502621541006

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

-57R (0411)      CHL (11/04)           Page 3 of 5         Initials: FV  HV

                                                           Form 3170 1/01

Print Time: 01/27/2010 3:15:09 PM                LEHIGH COUNTY

DOC ID #: 00015026215410006

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

-57R (0411)          CHL (11/04)               Page 4 of 5                    Initials: FV HL
                                                                             Form 3170 1/01



DOC ID #: 00015026215410006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
FRANCIA VARGAS                                  - Borrower

_____ (Seal)
HECTOR B VARGAS                                 - Borrower

_____ (Seal)
                                                - Borrower

_____ (Seal)
                                                - Borrower

-57R (0411)      CHL (11/04)        Page 5 of 5                Form 3170 1/01



DOC ID #: 00015026215410006

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.



7377742
Page: 15 of 27
11/03/2006 09:18AM

DOC ID #: 0001502621541 0006

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.



7377742
Page: 16 of 27
11/03/2006 09:18AM

DOC ID #: 0001502621541 0006

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If

-6A(PA) (0508)      CHL (10/05)              Page 7 of 17                                Form 3039 1/01



DOC ID #: 00015026215410006

Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is



-6A(PA) (0508)        CHL (10/05)                    Page 6 of 17                           Form 3039  1/01

7377742
Page: 18 of 27
11/03/2006 09:18AM

DOC ID #: 00015026215410006

completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan



7377742
Page: 19 of 27
11/03/2006 09:10AM

DOC ID #: 00015026215410006

is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or



-6A(PA) (0508)          CHL (10/05)                    Page 10 of 17                              Form 3039 1/01

Print Time: 01/27/2010 3:15:09 PM                          LEHIGH COUNTY                          Inst # 7377742 - Page 20 of 27

DOC ID #: 0001502621541 0006

repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of

-6A(PA) (0508)     CHL (10/05)          Page 11 of 17                    Form 3039 1/01

7377742
Page: 21 of 27
11/09/2006 09.10AM

DOC ID #: 00015026215410006

Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by



DOC ID #: 00015026215410006

this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency,



7377742
Page: 23 of 27
11/03/2006 09:13AM

DOC ID #: 0001502621541O0006

instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

   20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

   Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

   21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

   Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

 -6A(PA) (0508)        CHL (10/05)              Page 14 of 17                        Form 3039 1/01

DOC ID #: 00015026215410006

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property, Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. Reinstatement Period. Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. Purchase Money Mortgage. If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. Interest Rate After Judgment. Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.



-6A(PA) (0508)          CHL (10/05)                    Page 15 of 17                                   Form 3039  1/01

7377742
Page: 25 of 27
11/03/2006 09.10AM

Print Time: 01/27/2010  3:15:08 PM

LEHIGH COUNTY                                          Inst.# 7377742 - Page 25 of 27

DOC ID #: 00015026215410006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
FRANCIA VARGAS                                                          -Borrower

_____ (Seal)
HECTOR B. VARGAS                                                      -Borrower

_____ (Seal)
                                                                                      -Borrower

_____ (Seal)
                                                                                      -Borrower

-6A(PA) (0506)          CHL (10/06)            Page 16 of 17            Form 3039 1/01



7377742
Page: 26 of 27
11/06/2006 09:16AM

DOC ID #: 0001502621541006

COMMONWEALTH OF PENNSYLVANIA,

BUCKS County ss:

On this, the _23ʳᵈ_ day of _OCTOBER_ , _2006_ , before me, the undersigned officer, personally appeared _FRANCIA VARGAS AND HECTOR B VARGAS_

_____ known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires:

_Maureen A. Coburn_

_NOTARY PUBLIC_
Title of Officer

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Maureen A. Coburn, Notary Public
Tobyhanna Twp., Monroe County
My Commission Expires Sept. 23, 2007
Member, Pennsylvania Association Of Notaries

Certificate of Residence

I, _MAUREEN A. COBURN_ , do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this _23ʳᵈ_ day of _OCTOBER, 2006_ .

_Maureen A. Coburn_
Agent of Mortgagee

-6A(PA) (0508)    CHL (10/05)    Page 17 of 17    Form 3039 1/01

7377742
Page: 27 of 27
11/03/2006 09:18AM

# Exhibit B

Prepared by: MELANIE POWERS

LOAN #: 150262154

# ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

OCTOBER 23, 2006                ALLENTOWN                PENNSYLVANIA
      [Date]                       [City]                     [State]

332 N 16TH ST, ALLENTOWN, PA 18102-5615
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 141,600.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     8.750 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the *first*        day of each month beginning on
DECEMBER 01, 2006    . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   NOVEMBER 01, 2036   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,113.97           . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the *first*        day of NOVEMBER, 2008  , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX & SEVEN-EIGHTHS        percentage point(s) (   6.875 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

---

PENNSYLVANIA ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family
● BC - ARM Note
2D176-PA (12/05)(d)                          Page 1 of 3





LOAN #: 150262154

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   10.250 % or less than 8.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF           percentage point(s) (    1.500  %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than   15.750 % or less than    8.750 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

If the original Principal amount of this loan is $50,000 or less, I may make a Full or Partial Prepayment without paying a penalty. However, if the original Principal amount of this Note exceeds $50,000,

☐ I may prepay this Note in full at any time without penalty.

☒ If within the first TWENTY FOUR           months after the execution of the Note, I make any prepayment(s) within any 12-month period, the total of which exceeds 20 percent (20%) of the original principal amount of this loan, I will pay a prepayment penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds 20 percent (20%) of the original principal amount of the loan.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN           calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

LOAN #: 150262154

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
FRANCIA VARGAS                                          -Borrower

_____
                                                       -Borrower

_____
                                                       -Borrower

_____
                                                       -Borrower

*[Sign Original Only]*